## WILLIAMS *v.* BENNETT.

Opinion delivered June 10, 1905.

1. JUDGMENT—VALIDITY.—A domestic judgment is not invalid because based on a foreign judgment which was not properly authenticated, as this is a mere matter of sufficiency of the evidence before the court, and is reviewable on appeal only. (Page 316.)

2. SUIT TO REMOVE CLOUD—TITLE TO SUPPORT.—One who sues to quiet his title is not required to be a *bona fide* purchaser; it being sufficient if he has a reasonably clear title. (Page 316.)

3. APPEAL—QUESTION NOT RAISED.—A question not raised at the trial will not be considered on appeal. (Page 317.)

4. REMOVAL OF CLOUD—NONPAYMENT OF TAXES AS DEFENSE.—Prior to the act of March 18, 1899, relating to the acquisition of title by payment of taxes on wild and unimproved land, failure of a landowner to pay taxes thereon for any number of years would not bar his right to remove a void tax title to the land, in the absence of evidence of enhanced value of the land, of a change of status of anyone toward the land, of a loss of evidence by lapse of time, or any other equitable ground to invoke estoppel by laches. (Page 317.)

5. JUDGMENT—VALIDITY—LACHES.—After the lapse of thirty-five years a judgment in an attachment suit against a nonresident defendant will not be open to attack because no affidavit for warning order and attachment appears in the files of the case. (Page 318.)

6. SHERIFF'S DEED—IRREGULARITY—LACHES.—Where a sheriff's deed, executed thirty-five years ago, contains a copy of an order of the court, certified by the clerk, directing its acknowledgment to be noted thereon, it is too late to raise the objection that there is no entry in the minutes of the court of such acknowledgment, as required by Rev. Stat., ch. 60, § 57 (Kirby's Digest, § 3302.) (Page 318.)

7. JUDGMENT—VALIDITY—LACHES.—After the lapse of thirty-five years the courts will decline to consider defects in a judgment which might have been cured by parol evidence, had the defects been raised within a reasonable time after the judgment was rendered. (Page 318.)

8. LACHES—IGNORANCE AS EXCUSE FOR DELAY.—Delay of plaintiffs and their ancestor for more than thirty-five years before moving to assert their rights is not excused by the fact that plaintiffs were ignorant of their rights until a short time before they brought suit, if the facts relative thereto were open to the world, were known to their ancestor for eight years before his death, and they fail to explain the cause of their long delay in ascertaining their rights. (Page 319.)

9. LACHES—LOSS OF EVIDENCE—CHANGE OF STATUS.—Delay for an unreasonable length of time in bringing an action to remove a cloud upon title is such laches as will bar relief if by reason of the lapse of time defendants have lost evidence which might have established the validity of their title, or if by reason of such lapse of time their status toward the property has changed, as would be the case if plaintiffs waited until defendants had conducted to successful conclusion expensive litigation to establish their title. (Page 320.)

Appeal from Arkansas Chancery Court.

JOHN M. ELLIOTT, Judge.

Affirmed.

*H. A. & J. R. Parker,* for appellants.

The affidavit not having been filed as required by law, the attachment was improperly issued. 40 Ark. 124; Waples, Att. 76; 70 Ark. 409. The sale made under it was never confirmed, and was void. 52 Ark. 446. In actions against a non-resident, the statute must be strictly construed. 40 Ark. 124; 11 Ark. 120; 65 Ark. 90; 50 Ark. 439; 55 Ark. 135; 155 U. S. 313. It must affirmatively appear that an affidavit of the non-residence of defendant was filed. 25 Ark. 60; 70 Ark. 409; 8 Fed. 656; 37 Fed. 37; 57 Fed. 970; 17 Utah, 257; 58 Mich. 293; 39 Minn. 337; 91 U. S. 503; 97 U. S. 449; 110 U. S. 701; 139 U. S. 137; 173 U. S. 555; 4 Cyc. 469-517. The record must affirmatively show that the statute has been complied with. 56 Md. 59; 31 Md. 229; 20 Md. 248; 1 Md. 372; 8 Wash. 263; Drake, Att. 90. The rule of *caveat emptor* applies. Rorer, Jud. Sales, § 452; 32 Ark. 331. Parties holding under a quitclaim deed are not innocent parties. 23 Ark. 740; 50 Ark. 322; 145 U. S. 492. Attachment is a judicial sale. Rorer, Jud. Sales, § 593; Gould's Dig. § § 42, 25. 172. A quitclaim deed is notice of imperfections in title. 23 Ark. 735; 50 Ark. 322; 34 Ark. 590. Collateral attack is proper in this proceeding. 4 Vt. 506; 6 Barb. 617; 37 Minn. 506; 38 Minn. 506; 67 Minn. 63; 41 Ill. 45; 15 Wis. 188; 36 Kan. 543; 32 Barb. 604; 54 Texas, 194; 67 Miss. 543; 32 Ga. 653; 65 Ark. 142; 11 Ark. 120; 14 Ark. 408; 22 Ark. 286.

*P. C. Dooley,* for appellees.

The recitals in deeds of sheriffs are evidence of the facts therein stated. Sand. & H. Dig. § 3119; Rorer, Jud. Sales, § § 836-841. And cannot be impeached collaterally. 1 Blackf. 167; 2 Pet. 157; 29 Ia. 289; 35 Miss. 63; 24 Cal. 411; 45 Ark. 52. The attachment was properly issued. 10 Pet. 449; 47 Ark. 131; 49 Ark. 411; 66 Ark. 1; 5 Ark. 43; 55 Ark. 36. The sale and deed were approved by the court. 35 Ark. 298; 53 Ark. 43; 13 S. W. 597; 33 Ark. 294; 35 Mo. 464; 63 Tex. 210; 58 Mo. 559; 63 Mo. 523; 103 Mo. 661. Appellants are guilty of laches. 60 Ark. 55; 13 S. E. 939; 15 N. W. 23; 60 N. W. 633; 56 Ark. 601; 55 Ark. 85; 76 Fed. 65; 79 Fed. 853; 53 N. J. Eq. 39; 27 Ore. 219; 145 U. S. 368; 142 U. S. 236; 60 Ark. 453; 82 Fed. 97; Story, Eq. 1520; 148 Ill. 207; 39 W. Va. 108; 43 Neb. 772; 51 Am. Dec. 506; 9 N. E. 386; 2 Dembitz, L. Titles, § 188; 178 U. S. 207; 3 How. 347; Wood, Lim. 121; 1 How. 161, 231; 70 Ark. 185; 21 Ark. 16; 120 U. S. 534. The court had jurisdiction, and a collateral attack cannot prevail. Sand. & H. Dig. § 1113; 34 Ark. 407; 16 Ark. 106; 12 Ark. 421; 47 Ark. 226; 55 Ark. 307; 17 Ark. 546; 10 Wall, 308. The action is barred by limitations. Sand. & H. Dig. § 4818; 21 Wall. 178; 94 U. S. 809; 124 U. S. 183; 15 Ark. 286.

*H. A. & J. R. Parker,* for appellants in reply.

Payment of taxes does not give any right to interest in land. 45 Ark. 81; 88 N. C. 373; 70 Ark. 256. There can be no actual possession against the real owner until there is actual adverse possession by some other person. 21 Ark. 9; 57 Ark. 523; 60 Ark. 165; 69 Ark. 424. The title vested by a sheriff's deed under an attachment sale is not absolute. 46 Ark. 96; 35 Ark. 505; 16 Mich. 12; 21 Ia. 70. Poverty connected with other facts will excuse laches. 41 N. Y. Eq. 582; 1 Ball, 342; 93 U. S. 491. Absence from the State and ignorance of rights will excuse laches. 49 N. J. Eq. 111; 98 Ia. 32; 10 How. 174; Coke, Litt. § 340; 100 Fed. 520; 66 Fed. 832; 80 Fed. 458; 73 Fed. 701; 152 U. S. 412.

*P. C. Dooley,* for appellees in reply.

There is nothing in the record which shows any irregularities in issuing the attachment.   38 Ark. 571; Rorer, Jud. Sales, § 127; 2 Fed. 27; 26 Ark. 421.   The absence of the affidavit will not affect the validity of the sale in a collateral proceeding.   2 La. Ann. 442; 71 Mo. 403; 5 Wis. 173; 2 Wall, 328; 79 Ill. 391; 73 N. Y. 1; 7 Bush, 380; 6 Ala. 154; 17 Ark. 397.   The publication of notice was sufficient.   117 U. S. 255.

HILL, C. J.   This suit was brought in the chancery court of Arkansas County by the administrator and heirs at law of Ferdinand M. Goodrich, who died in 1878, to set aside a deed executed by the sheriff of Arkansas County to Amazon Dixon, and deeds from Amazon Dixon's heirs, under whom the appellees claim, as clouds on their title, and that they be permitted to redeem from tax liens, and have their title quieted.   Goodrich, to whom both parties look as the source of their respective titles, was the owner of the land in controversy, lived in Louisiana, and a judgment was obtained against him in a court of that State.   In 1867 his judgment creditor, John J. Michie, filed suit against him in Arkansas County Circuit Court, and obtained an attachment, which was levied on this land.   The first proceedings seemed to have been based upon the attachment provisions then contained in Gould's Digest, but the attachment law was amended in 1867, which was evidently not known when these proceedings were instituted.   At the next term of court, evidently discovering the proceedings were irregular, the plaintiff caused the first attachment to be set aside, and the court ordered constructive service to be made, and the lands were levied upon under alias attachment, warning order was published, and proof of publication filed.   Judgment was entered November 8, 1867, and the lands ordered sold.   On November 25, 1867, Amazon A. Dixon as principal and others as sureties executed a bond to Goodrich (and his codefendant, who was only a nominal party) in form of the statute requiring such bond of the judgment creditor before sale of the attached land. This bond recited the death of John J. Michie, and that Amazon A. Dixon was his "sole heiress."   This bond was filed November 9, 1868, and a ven. ex. issued April 3, 1869, under which the land was sold and bought by Amazon A. Dixon.   The sheriff's

deed was executed May 11, 1870. The record fails to show confirmation of the sale, but this deed has a certified copy of what purports to be its presentation in open court, and an order that its acknowledgment in court be indorsed on the deed and certified by the clerk, to the end that the deed may be entitled to record. Various attacks are made on the validity of these proceedings. The first is that there is no affidavit for attachment or warning order. The record does not negative in any way its existence, and the evidence to sustain this allegation is the absence from the papers, which otherwise seem complete, of the affidavit. This will be considered in another connection.

It is, claimed that the deed is based on an attachment which was set aside, and is therefore void. As indicated, the first proceeding was not in conformity to a new statute; the second was in substantial compliance therewith, and, if irregular, the irregularities did not extend to more than errors rendering the judgment reversible, not void on collateral attack. In fact, a slight amendment to the sheriff's return would have obviated many of the questions now presented.

It is contended that the term of court at which the proceedings were begun anew was held at the wrong time. It is true that the act of March 13, 1867, changed the time, but that act provided that the change should not take effect until after the 1st of July, 1867, and hence the May term, 1867, when the order was made, was not affected thereby.

The next point is the lack of confirmation appearing of record, and the lack of proper authentication appearing upon the Louisiana judgment. The former matter will be referred to again, and, as to the latter, it was a matter of the sufficiency of the evidence before the court, reviewable on appeal only.

Attack is made on the titles of the appellees. They are charged with not being *bona fide* purchasers; but that issue is immaterial, for the plaintiff in these actions to quiet title must have a "reasonably clear title," to invoke the jurisdiction of equity. *Lawrence* v. *Zimpleman,* 37 Ark. 643. They are not trespassers, and have a title which has been successfully maintained in another litigation against other parties claiming under

Amazon A. Dixon, which will be referred to again. Whether they were *bona fide* purchasers, or speculating on the strength of the title they bought, makes no difference here, for they are indisputably the owners of the Amazon Dixon title, and the question is whether that title is good, or whether the appellants have successfully assailed it.

Another reason is presented here why the Dixon title is not good, and that is that it appears from the bond given for the sale that Michie, the plaintiff, was dead, and authorities are cited on both sides to the effect of his death after judgment and before sale, and also as to the bond being made by some one other than the judgment plaintiff. In this case it was made by his sole heir. That question was not raised in the pleadings below, and should not be raised here for the first time.

It appears that in 1882 this land was sold under probate order by the executor of Amazon Dixon and guardian of her children, and purchased by Gibson, and Gibson conveyed to Newgass, and Newgass to Beer. Suit was brought by the appellant, Bennett, as grantee of the Dixon heirs, or some of them, against Newgass and Beer in the United States Circuit Court, and he prevailed, and in 1899, a decree was entered in his favor for the land, subject to a lien for taxes paid by Newgass and Beer amounting to about $3,500, which was satisfied some two years before this suit was brought by the appellants.

It appears that the appellants live in Kentucky, and had no information of their rights, supposed or real, to this land until a short time before the suit was brought. They learned of their supposed rights from a letter written by one Brown in Louisiana, and later through attorneys in Arkansas County, who were engaged to bring this suit. The transactions culminating in the deed of May 11, 1870, to Mrs. Dixon were had from 1867 to 1870, and this suit was filed February 28, 1902. The land has always been wild and unoccupied, and the record is silent as to its value at any time. This court recently held that, as to wild and unoccupied lands, the mere payment of taxes under a void tax title for thirteen years would not ripen the void tax title, and the landowners who failed for the period to pay taxes

or assert their rights would not be barred by laches from so doing where there was no evidence of enhanced value, no evidence of the change of status of any one towards the land, and no loss of evidence by lapse of time, or other equitable ground to. invoke estoppel by laches. *Jackson* v. *Boyd,* 75 Ark. 194. There is no evidence here of the increase in the value, and the same argument is made here as in *Jackson* v. *Boyd* that it is to be inferred from the general increase in land values over the State, but, as therein decided, that is insufficient. Loss of evidence is one of the most frequent causes to defeat an asserted right by laches. This case aptly illustrates the necessity of that salutary rule of equity jurisprudence. Almost every defect relied upon is susceptible of correction by parol.

Much stress is laid upon the absence of the affidavit for warning order and attachment. The files in the case disclose all other important papers except this, and after thirty-five years it is impossible to prove that it was duly made and filed and has been lost; yet, if this suit had been brought in reasonable time, can any one doubt that this would have been proved? The other papers show a painstaking effort to comply with the statute, and surely this primal requirement would not have been omitted. After the papers have been subject to public inspection and handling for thirty-five years, no presumption can be indulged that they are "all present or accounted for."

The record fails to show confirmation of the sale or approval of the deed, yet the deed contains what purports to be a copy of an order directing its acknowledgment to be noted thereon, to the end that it be recorded. This certified under the signature of the clerk and the seal of the court. Either this is a false official certificate, or else the record was omitted. Thirty odd years ago it would have been easy to correct the record by *nunc pro tunc,* or punish the officer for making a false and forged certificate of an order.

If the question whether the abatement of the suit by the death of the plaintiff (Michie) precluded valid subsequent process could be considered and become material, then parol evidence of the date of death, the condition of his estate and the devolution

of his property would be important. If the sheriff's return is so fatally defective as appellant contends, it could easily have been amended at that time. The matter in which it is defective, the failure to show that Goodrich was not to be found in the county, was a failure to show something evidently a fact. Conceding, without deciding, that every defect relied upon is fatal to the title, yet every one was susceptible thirty-five years ago of having been met by parol evidence and the defect cured. There is not a single matter open to appellant on the face of the record of that class which cannot be supplied by parol or else is susceptible to proper amendment. A stronger case for the application of the rule as to laches on account of loss of evidence cannot be found.

But it is shown that the appellants were ignorant of their rights until a short time before the suit was brought, and it is insisted that this excuses them. They utterly fail to show in their pleadings or evidence the cause of the long delay in ascertaining their rights. All matters now set up have been open to the world for thirty-five years, and to their ancestor for eight years and more before his death. When the opposing party misleads, or the facts are successfully concealed, or other reasons render ignorance permissible, it is an excuse for laches; but there must be a showing of some good reasons.

This question was before the Supreme Court of the United States in the case of *Wetzel* v. *Minn. Railway Transfer Co.,* 169 U. S. 237. Remsen was a soldier in the Mexican war, and as such became entitled to a land warrant. The warrant was issued to his widow and children, and was sold by the widow and one adult child, acting for all, but they failed to procure proper consent of the orphan's court, rendering the sale void on account of such failure. The parties lived in Philadelphia, and the purchaser located the land warrant on lands near St. Paul, Minn., which in time became very valuable. Incidentally, the heirs learned of the defect from a lawyer who was examining into titles, and thirty years after the youngest became of age brought suit for the land. The court held that the exercise of diligence was incumbent on them; that they knew (or, if not, were culpably ignorant) that their father was a Mexican war veteran, and that fact would lead to information that he would be entitled to a

land warrant.   In this case these heirs certainly knew, or else were culpably ignorant, that their father had owned this large tract of about 8,000 acres of land.   The court said in the case mentioned that knowledge of the transfer came to them, not through any exertion of themselves, but from an accidental meeting with this lawyer.   In this case the knowledge came to these parties through a third person, and not through their exertion. In that case the ground for applying laches was the great increase in the value of the property; in this the equally well established ground of loss of evidence.   The court concluded:   "While the fact that the complainants were ignorant of the defect in the title and were without means to prosecute an investigation into the facts may properly be considered by the court, it does not mitigate the hardships to the defendants of unsettling these titles.   If the complainant may put forward these excuses for delay after thirty years, there is no reason why they may not allege the same as an excuse after a lapse of sixty.   The truth is, there must be some limit of time within which these excuses shall be available, or titles might forever be insecure.   The interests of public order and tranquillity demand that parties shall acquaint themselves with their rights within a reasonable time, and although this time may be extended by their actual ignorance, or want of means, it is by no means illimitable."   This reasoning, from this great tribunal, is so sound, and so in harmony with many decisions of this court, that it is decisive of this case.

In addition to the loss of evidence, the status of parties towards this property has changed.   The appellees purchased, for a small sum, it is true, the interests of the Dixon heirs, but they conducted to successful conclusion a lawsuit to establish their rights, and then had to pay $3,500 tax liens, and this was done over two years before this suit was brought.   They put in time and money to win the land, and the appellants waited till after they won the suit and expended this sum, and now seek to recover the lands of them.   All of these matters were publicly done in the courts of the country, and these parties waited too long to ascertain and assert what are, at best, very doubtful rights.

The decree is affirmed.