Auten *v.* St. Louis, Iron Mountain & Southern
Railway Company.

Opinion delivered October 27, 1913.

1.   Laches—ignorance as excuse for delay.—A. owned stock in the Cairo & Fulton Rd. Co., and in 1874, that company was taken over by the St. Louis, I. M. & S. Ry. Co., and its property owned and operated by the latter company thereafter. In 1911, appellant purchased the stock from A. and brought suit against the St. Louis, I. M. & S. Ry. Co. for the value thereof. *Held,* appellant's claim was stale and barred by laches of A., as the consolidation was open and notorious, and A. could have ascertained the facts upon reasonable inquiry, and A. is charged with knowledge of such facts as would have been revealed by a reasonable inquiry. (Page 30.)

2.  LACHES—ACCOUNTING.—The vendee of stock in a corporation
    which was consolidated with another corporation in 1874, is not
    entitled to an accounting as against the latter corporation on
    account of said consolidation, in an action brought in 1911, as the
    claim is stale, and the vendee and his vendor have waited past
    the time wherein they might begin the enforcement of their
    right.  (Page 31.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This suit was brought by appellant in the Pulaski Chancery Court, the object of which appears from the following recitals contained in the complaint:

That on April 30, 1874, and prior thereto, the Cairo & Fulton Railroad Company was a railroad corporation owning and operating a railroad in the State of Arkansas; that its capital stock was divided into shares of twenty-five dollars each; that on the 30th day of April, 1874, there was a consolidation of the Cairo & Fulton Railroad Company with the St. Louis & Iron Mountain Railroad Company, another corporation; and that by the consolidation of the two said roads, there was organized and incorporated under the laws of Arkansas the St. Louis, Iron Mountain & Southern Railway Company, which is the defendant herein, and a railroad corporation owning and operating a line of railroad in the State of Arkansas.

That under the laws of the State of Arkansas and Missouri, the consolidation was authorized and took place as above stated, and after providing for the capital stock, etc., section 2, article 4, of the charter of said consolidated company, provided:

"Every stockholder in each of the corporations hereto of the first and second part, shall receive in place of the stock held by him in such corporations, stock in the new corporation as follows, towit:  For each share of stock held in the St. Louis & Iron Mountain Railroad Company, he shall receive one share of the stock of the St. Louis, Iron Mountain & Southern Railway Company,

and for each share of stock in the Cairo & Fulton Railroad Company, he shall receive sixty-one hundredths of one share in the St. Louis, Iron Mountain & Southern Railway Company.''

It was further alleged that the stock in the St. Louis Iron Mountain & Southern Railway Company was divided into shares of one hundred dollars each. That plaintiff was owner of twenty shares of the stock of the Cairo & Fulton Railroad, evidenced by certificate No. 529, and that according to the resolutions and articles of the defendant, the consolidated company, the holder thereof would be entitled to twelve shares of the capital stock of the defendant company. That the value of the shares of the Cairo & Fulton Railroad Company stock was twenty-five dollars each, and the plaintiff stated that he was therefore entitled to the value of twelve shares in the St. Louis, Iron Mountain & Southern Railway Company of the value of one hundred dollars each, together with the accumulated interest and dividends from the time of the consolidation to the present time.

It was further alleged that no notice was ever given him, or to the person who transferred the Cairo & Fulton stock to him, either of the consolidation, or the right to exchange the stock. That when plaintiff became the owner of the stock, he immediately took the question up with the defendant company, which now denies that he is entitled to any shares of the St. Louis, Iron Mountain & Southern Railway Company, and refuses to recognize any right in the plaintiff at all, and refuses to make payments of any dividends to him.

Plaintiff alleged that his stock had earned large dividends ever since the consolidation; that the defendant consolidated company has earned large dividends, and has often paid dividends, and that part of the consolidated railroad which was formerly the Cairo & Fulton road, was by far the best property of the consolidated road. That upon the consolidation above referred to, the defendant, St. Louis, Iron Mountain & Southern Railway Company took possession of all property of the

Cairo & Fulton Railroad Company of every character, and have converted it to their own use, and now refuse to either issue stock to this plaintiff, or to recognize his rights or to compensate him in any way. Plaintiff alleged the par value of his stock is twelve hundred dollars, and that it has earned since the consolidation up to the present time more than 20 per cent per annum, making his stock, together with the accumulated dividends, now worth $6,120.

Plaintiff further alleged that in violation of the law, and in violation of the plaintiff's right, the defendant company has used its funds, and the funds belonging to the plaintiff, to purchase stock in their own and other corporations. That the defendant has not complied with the law of this State with reference to making reports, and the plaintiff is therefore unable to determine what his rights are. He alleged that there was no method by which it can be known what dividends have been earned, nor what has become of the earnings other than to have an accounting, and he prays that a master be appointed and an accounting ordered, and that defendant be required to bring its books and records into the State of Arkansas and keep them here, that they may be open to the inspection of himself and all other stockholders.

In response to a motion to make the complaint more definite and certain, appellant amended his complaint by alleging that he became the owner of the twenty shares of stock on the 11th day of February, 1911, and that they were transferred to him by J. H. Putnam as trustee for St. Andrew's Church at Tioga, Tioga County, Pennsylvania.

Whereupon, the defendant demurred to the complaint upon the grounds that, as amended, it did not state facts sufficient to constitute a cause of action, and because the complaint shows that the alleged claim of plaintiff is stale and barred by laches, and the long delay of plaintiff, and those under whom he claims.

Upon the above pleadings the court rendered a decree sustaining appellee's demurrer, and dismissed the

complaint on the ground of staleness of claim and laches in its assertion. This appeal was prosecuted from the order sustaining the demurrer and dismissing the complaint.

*Mehaffy, Reid & Mehaffy,* for appellant.

1. To charge one with laches he must have knowledge of his rights and of their being invaded; and if he acts as soon as possible after learning of his rights or of their invasion, he can not be charged with laches. 31 Atl. 833.

Neither can one be charged with laches if he has had no notice of his rights, or that they are being denied, and this notice must be actual, not constructive. 86 Ark. 300.

Laches involves more than mere delay; it involves also some change in the parties or relations which would make it inequitable to enforce the claim. 34 S. W. 209; 75 Fed. 860; 67 Fed. 31; 50 N. W. 143; 80 Va. 22; 27 S. E. 504.

2. Appellant had more than a mere right to exchange his Cairo & Fulton stock for stock in the consolidated company—he was a stockholder in the latter company by virtue of its charter, and it makes no difference that a certificate of stock in the consolidated company had never been delivered to him.

His right of action to compel recognition of his rights as a stockholder did not accrue until they were denied. 84 N. W. 862; 64 N. W. 69; 43 N. W. 602.

The relations between the parties is a fiduciary one, and laches could not apply. 144 Fed. 765; 30 Pa. St. 42.

Stockholders of a corporation may rely on the honesty of their associates and officers, and can not lose their rights by failure to inquire into or interfere with the affairs of the corporation. Occupying a fiduciary relationship, the officers of a corporation are accountable to its stockholders on the principles governing that relationship. 145 Fed. 103; 45 S. E. 232; 69 N. E. 206; 107 N. W. 629; 77 Pac 277.

*E. B. Kinsworthy* and *R. E. Wiley,* for appellee.

1. It appears from appellant's complaint that he and his grantor slept on their rights for thirty-eight years, and no excuse is shown for the delay.

Equity will not aid in enforcing stale demands where the parties seeking to enforce them have been guilty of delay and have slept upon their rights. 3 Bro. C. C. 640; 19 Ark. 21; 88 Ark. 333; 55 Ark. 85-92; 87 Ark. 232; 95 Ark. 178; 58 Ark. 580; 81 Ark. 279; 86 Ark. 591; 85 Ark. 372; 18 Fed. 209; 65 N. H. 394; 16 Blatch. 549; 206 Ill. 261, 68 N. E. 1070; 11 Wall. 96-109; 241 Ill. 238, 89 N. E. 351; 124 N. Y. S. 85.

Means of knowledge are in equity equivalent to knowledge itself. And where the circumstances are sufficient to have induced inquiry, and the means of ascertaining the truth were available, the party is chargeable with knowledge of the truth. 18 Fed. 209; 11 Wall. 96-109; 143 Ala. 427-435; 101 U. S. 141; 245 Ill. 56; 91 N. E. 776; 156 Cal. 544; 105 Pac. 600; 58 Ark. 84-91; *Id.* 446-453.

Lapse of time alone in this case would be sufficient to bar appellant's claim. 54 So. 685; 133 Fed. 289; *Id.* 1020; 112 Fed. 81, 114 Fed. 263; 157 Fed. 73.

2. The consolidation of corporations creates a new corporation from the date of the consolidation. 180 U. S. 1. And persons must acquire rights as shareholders in it as they would acquire rights in any other corporation. 141 U. S. 234; 44 Ga. 597; 77 Md. 341; 33 N. Y. 421-428.

The mere existence of a fiduciary relation between a corporation and its shareholders does not prevent the application of laches as a defense. Noyes on Intercorporate Relations, § 49; 143 Ala. 427, and cases cited; 51 N. J. Eq. 40.

SMITH, J., (after stating the facts). Few decisions have been cited oftener, and none have been more universally approved, than the case of *Smith* v. *Clay,* 3 Bro. C. C. p. 640, where Lord Camden said:

"A court of equity, which is never active in relief

in cases against conscience or public convenience, has always refused its aid to stale demands where the party has slept upon his rights and acquiesced for a great length of time. Nothing can call this court into activity, but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing."

This appears to be a case calling for the application óf this doctrine; but appellant says this doctrine should not be applied to him because, under the allegations of his complaint, he had no knowledge of the action taken by the corporations resulting in their consolidation, and did not know what his rights in the premises were, and that there had never been any denial of his rights by the consolidated company until his demand, immediately preceding the institution of this suit. But it is well settled that means of knowledge are in equity equivalent to knowledge itself. While knowledge is necessary to ground the defense of laches, yet, where the circumstances were such as to have induced inquiry, and the means of ascertaining the truth were available, the party is chargeable with knowledge of the truth; the law in such cases being that, "where the question of laches is in issue, the plaintiff is charged with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Johnston* v. *Standard Mining Co.,* 148 U. S. 370; *Williams* v. *Bennett,* 75 Ark. 312.

Under the allegations of the complaint appellant's vendor knew he was a stockholder of the Cairo & Fulton Railroad Company, and that for a long period of years he was being paid no dividends on his investment, yet it appears from the complaint that appellee took possession on the 30th of April, 1874, of all the property of the Cairo & Fulton Railroad Company of every character, and converted it to its own use, and has since continuously used it. It is not alleged in the complaint that appellant's vendor had no notice of this fact, and after these years,

the presumption must be indulged that he did know it. But it is manifest, that at any time, the slightest inquiry would have disclosed the facts to him, because they were notorious and of common and general public knowledge, for the appellee took the property pursuant to the agreement of consolidation stated·in the complaint, which was made under the public statutes of Arkansas and Missouri.

One interested as part owner of the Cairo & Fulton Railroad Company could not ignore a fact of such public notoriety as that that railroad, which was one of the principal railroads in the State, had passed entirely out of existence and that the railroad which had been called by that name had ceased to be so called, and was called by another name, and had become the property of another company. The failure to receive dividends or other returns upon his stock should have suggested some inquiry, and the slightest inquiry would have apprised him of the truth, for the means of knowledge were immediately at hand, and he could have readily learned every fact now relied on as grounds for recovery.

The complaint alleges that the consolidated company has used its funds and funds belonging to the plaintiff to purchase stock in its own and other corporations, thus showing changes in the relations and situation of the parties and the necessity for an extensive accounting after the lapse of many years. This can not now be required, for the rights appellant may once have had are now too stale to command the attention of the court. Of necessity there must come a time, beyond which one can not wait, to begin the enforcement of any right, however meritorious. In our judgment that time was exceeded here, and the judgment and the decree of the court below is therefore affirmed.