Agustín Balasquide, Petitioner and Appellee, *v.* Manuel Luján, etc., et al., Respondents; and Francisca Miranda, etc., Intervener and Appellant.

No. 6081. Argued May 12, 1933.—Decided July 22, 1933.

*L. Santiago Carmona* for appellant.  *José C. Jusino* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Agustín Balasquide petitioned the District Court of Bayamón for a writ of mandamus directed to Manuel E. Luján

and Agustín Espinosa, respectively Secretary-Auditor and Mayor-Treasurer of the Municipality of Cataño, to compel the immediate issuance of the warrants and certificates of payment pertaining to the salary earned by Víctor Martínez, a former secretary-auditor of said municipality, during the months of June, October last half-month, November, and December of 1930, and January, (twenty-six days), 1931, amounting to $436.58.

As Víctor Martínez had died, the court ordered that notice of the petition be served on his heirs. The latter appeared and filed a petition in opposition to the issuance of the writ in favor of Balasquide, and prayed that the same be issued in their favor. They denied that their ancestor had signed any authentic document assigning his salary and raised the following questions:

1, Impropriety of the writ sought because what is demanded is the performance of a contract;

2, Want of a cause of action because what appears from the petition is an order to withhold checks and not an order of payment;

3, Want of a cause of action because the documents involved are not authentic as required by the Regulations of the Office of the Auditor;

4, Want of a cause of action because the document pertaining to January shows that it was executed to provide for an assignment of an unearned salary, which is contrary to public policy, and

5, The defense of *res judicata*.

The writ was issued and all the interested parties appeared on the day set for the hearing. The defendants stated that they had not complied with it because there was a conflict of claims between the petitioner and the interveners, and they awaited the settlement of such conflict by the court in order to act; and, further, because the municipality lacked sufficient funds for the purpose. Evidence was introduced and the court finally rendered judgment in favor of the petitioner. The interveners appealed and assigned in

their brief five errors, which correspond to the five questions already mentioned that they raised in the district court and were there decided against them.

Upon this case being discussed in conference among the members of this court, the question arose as to whether or not there is a right to intervene in cases of mandamus.

Summarizing the decisions on the matter, Corpus Juris says:

"In a number of decisions it has been either held or said that intervention is not permissible in the absence of statutory authority therefor even where a right or interest in the subject matter of the litigation exists. And it has been held that intervention is not permissible where by statute the only pleadings allowed in a mandamus proceeding are the writ and answer. On the other hand, in other cases in which no statutory authority was mentioned, it was either held or said that intervention was permissible on a proper showing of interest in the subject matter in litigation. And under the statutes of some jurisdictions, any person or corporation who by reason of interest might have been joined as a necessary or proper party respondent in mandamus proceedings will ordinarily be permitted to intervene therein." 38 C. J. 856.

In support of the negative of this proposition, cases from Illinois, Missouri, Iowa, and Oklahoma are cited in the footnotes to the text, and, to uphold the affirmative, cases from Arkansas, Nebraska, North Carolina, Texas, Virginia, Connecticut, and Puerto Rico are similarly cited.

The decision thus cited from this jurisdiction was rendered in the case of *Puente et al.* v. *Foote, District Judge,* 17 P.R.R. 853, 855. There it was said:

"The intervention of said parties was properly allowed, because the general rule in American jurisprudence in such cases is to allow the intervention of parties who may be affected by the decision rendered. (26 Cyc. 418)

"Moreover, this Supreme Court in analogous cases, such as applications for writs of *certiorari*, has permitted such intervention whenever an interest in the case has been shown."

In *Conlee* v. *Clay City et al.*, a case from Kentucky, reported in 102 S. W. 862, it was said:

"The court properly allowed the two taxpayers and voters of the town to be made parties and defend the action, when it appeared that there was a collusion between the defendants and the plaintiff. The mayor and council are but the representatives of the people of the municipality, and, when they collude with the plaintiff, it is proper that the citizens of the town may make defense, if they desire to do so, for otherwise the truth may be concealed from the court."

In *Johnston et al.* v. *Conway*, 237 S. W. 80, 82, the Supreme Court of Arkansas declared:

"Upon the petition of the appellants to be made parties to the proceedings, setting up that they were taxpayers and interested in the result of the litigation, which petition was duly verified, the court ruled correctly in permitting the appellants to intervene and to be treated as parties defendant. Besides, there was no response to the application of the appellants to be made parties. The appellee, not having objected in the court below to the ruling of the court making the appellants parties defendant, cannot raise such issue here for the first time. *Hadley* v. *Bryan,* 70 Ark. 197, 66 S. W. 921; *Williams* v. *Bennett,* 75 Ark. 312, 88 S. W. 600, 112 Am. St. Rep. 57."

The Supreme Court of Nebraska, in *First National Bank of Neligh* v. *Lancaster et al.,* 74 N. W. 858, applying a general provision contained in the Code of Civil Procedure of that State, similar to section 72 of our Code, expressed itself thus:

"The relator insists that the bank is a mere intruder in the case, and should not be permitted to assail the judgment, whether it is right or wrong. But we think there was no error in allowing the intervention. The writ of mandamus is no longer a prerogative writ. When it is the appropriate remedy it is issued as a matter of course on the relation of a private suitor. *State* v. *Commissioners of Butler Co.,* 11 Kan. 67; *Fisher* v. *Charleston,* 17 W. Va. 63; *State* v. *Cummings,* 17 Neb. 311, 22 N. W. 545. Section 50a of the Code is as follows: 'Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or

against both, in any action pending or to be brought in any of the courts of the state of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has joined in the action, and before the trial commences.' ''

The said Supreme Court of Nebraska, in a former case, *State ex rel. Graber* v. *Matley and others*, 24 N. W. 200, had declared:

"The rule is well settled that in matters of mere public right the people are the real party in interest, and in such cases the wrongful refusal of officers to act is no more the concern of one citizen that another. *People* v. *Collins*, 19 Wend. 56; *County of Pike* v. *State*, 11 Ill. 202; *The King* v. *Commissioners*, 1 Term. R. 146; Moses, Mand. 197, 198. In such cases it is sufficient for the relator to show that he is a citizen, and as such interested in the execution of the laws. *State* v. *Stearns*, 11 Neb. 104; S. C. 7 N. W. Rep. 743; *State* v. *Peacock*, 15 Neb. 442; S. C. 11 N. W. Rep. 685; *Hall* v. *People*, 57 Ill. 313; *State* v. *Judge*, 7 Iowa, 202; *Hamilton* v. *State*, 3 Ind. 458; *People* v. *Halsey*, 37 N. Y. 348; *State* v. *Shropshire*, 4 Neb. 413. And if any citizen may initiate proceedings to secure the enforcement of the laws, where the decision upon the relation might affect every citizen in the county, any other citizen certainly has the right to show to the court any fact which would defeat the action. This would have been so had an order to show cause been made, instead of issuing an alternative writ; and the fact that the writ was issued does not prevent the court from receiving such an application, showing that the writ was issued under a mistaken statement of facts. We therefore hold that the application to intervene was properly made.

Other decisions could be cited. The great majority of them refer to interventions in opposition to the issuance of the writ; but we have found one in Texas in which the intervener was substituted for the petitioner and finally obtained the issuance of the writ in his favor. We refer to *J. C. Wright* v. *Neathery, Adm'r., and another*, reported in

14 Texas 212. There the Supreme Court speaking through Judge Wheeler, said:

"Two grounds of error are relied on for reversing the judgment: 1st. That the demurrer to the plaintiffs' petition having been sustained, there was no suit pending, and consequently there could be no intervention. 2d. That the survey, having been made for the plaintiff Harper, did not support the claim of the intervenor. To the first ground it must be answered that, although the demurrer was sustained, judgment final was not rendered upon it for the defendant. The case was continued to afford the plaintiff an opportunity to amend, and was still pending when the appellee intervened. The plaintiff might still have amended his petition and prosecuted his suit to final judgment upon the merits had he seen proper, and his failure to do so could not deprive the intervenor of his right to maintain his claim, which had been asserted before final judgment rendered in the case. The objection, therefore, is not well founded."

The above question having been disposed of, we shall now proceed to consider and determine the assignments of error, beginning with the last one, namely, that which refers to *res judicata*. In its statement of the case and opinion forming the basis of its judgment, the district court said:

"The defense of *res judicata* was invoked by the intervener. It refers to case No. 439 of *Francisca Miranda et al.* v. *Agustín Espinosa et al.* and *Agustín Balasquide,* intervener, in mandamus. The petition and also the complaint in intervention were dismissed in that case for insufficiency of the evidence. As may be observed, the judgment does not constitute *res judicata* in the instant case, among other reasons, because no conflict of interests between Francisca Miranda and Agustín Balasquide was settled by that judgment; for in order that *res judicata* may exist, it is an indispensable requisite that a determination shall have been made in a former suit of the matter therein involved; and in the former case, to wit, number 439, the fundamental fact or essential question which has been here determined for the first time, was not adjudicated. See *Virella* v. *Virella,* 23 P.R.R. 644; *Ninlliat* v. *Suriñach et al.,* 27 P.R.R. 69."

In case No. 439 the petition was filed by the heirs of Martínez against the same respondents herein, praying that a writ of mandamus be issued commanding them to pay to

said heirs the same salary here involved. Balasquide, the petitioner herein, asked leave to intervene and did intervene, alleging the same facts on which he relies in the present suit and praying that the petition of the heirs of Martínez be denied and a writ issued instead ordering that payment be made in his favor in his capacity as assignee of Martínez.

Case No. 439 went to trial and the District Court of Bayamón decided it by a judgment of November 27, 1931, which is now final (*firme*), dismissing the claims of the heirs of Martínez as well as those of the intervener Balasquide. From the statement of the case and opinion on which that judgment was based, we transcribe the following:

"Agustín Balasquidez in his complaint in intervention alleges, in brief, that Víctor Martínez assigned and transferred to him his compensation or salary during the months of June, October, November, and December of 1930, and January of 1931, and executed in his favor instruments of assignment that were notified to and signed by the Treasurer of the Municipality of Cataño, amounting to the sum of $436.58, which belongs exclusively to him; that he has demanded payment from the respondents and they refused on the ground that the municipality lacked funds, and that they had certain doubts as to the manner in which said payment should be made in view of the death of Víctor Martínez; and that the defendants should be compelled to issue in his favor the corresponding warrants and make the proper payment to him of the $436.58 involved.

"The hearing of the case having been resumed on November 20, 1931, all the parties and their attorneys being present, the petitioners introduced their evidence and offered only documentary evidence consisting in the order of this court of June 9, 1931, declaring the petitioners herein and Victoria Martínez to be the sole and universal heirs of Víctor Martínez. At the close of petitioners' evidence, the respondents and the intervener stated that they had no evidence to offer; and the case was submitted for final judgment.

"As may be seen, the only averment of the petition that was established by positive evidence was the legal capacity of the petitioners to institute the present proceeding; and, by the defendants' admission, that Víctor Martínez died and was Auditor of the Municipality of Cataño; that his annual salary amounted to $1,200; that there is due and owing to him his salary for each of the months of June,

November, and December, 1930, half of that for October, 1930, and $86.58 pertaining to January, 1931; that those earnings have not been paid or satisfied.

"When the salary claimed by a municipal officer appears in the current budget, the duty of the municipal auditor to issue the necessary warrants is ministerial. 18 R.C.L. 221, 224; *Buitrago* v. *Medina et al.*, 33 P.R.R. 418. In such case the writ of mandamus lies. But in order that a petition for mandamus may be considered, it is necessary that the respondent shall have requested beforehand to perform the act which is sought to be enforced and that he shall have refused performance. 38 C. J. 579, par. 53; *Zavala et al.* v. *Executive Council of Porto Rico,* 9 P.R.R. 191; *Morales* v. *Wilson et al.,* 16 P.R.R. 714; *Coll* v. *Arzuaga,* 24 P.R.R. 548; *United States* v. *Bontwell,* 84 U. S. 607; 2 Bouvier's Law Dictionary; *Crandall* v. *Amador County,* 20 Cal. 72; *Oraville* v. *Plumas,* 37 Cal. 362; *People* v. *Romero,* 18 Cal. 92; Tapping on Mandamus, 282.

"The petitioners alleged that demand was made upon the respondents. The latter specifically denied such an averment; and the petitioners did not produce any evidence to substantiate this allegation of a previous request. With respect to this matter, it has been said:

" 'Inasmuch as this necessary prerequisite of the law has not been complied with by the applicants for the writ of mandamus in this case, the court might well decline to go further in the matter.' *Zavala et al.* v. *Executive Council of Porto Rico,* 9 P.R.R. 191, 194.

"The petition must be and is hereby dismissed. And the intervener not having proved the allegations of his complaint, the latter is likewise dismissed."

In our judgment, there exists between this case and No. 439 already decided, the perfect identity with respect to the subject matter and causes of action, the parties thereto, and the capacity in which they litigated, required by our Civil Code, section 1204, 1930 ed., in order that the presumption of *res judicata* may be effective.

Balasquide had a full opportunity in the case of mandamus brought by the heirs of Martínez to appear as he did and assert his right. His case was decided upon the merits. "And the intervener not having proved the allegations of

his complaint, the latter is likewise dismissed,'' declared and decided the district court. If he failed to adduce evidence, it was his own fault, and he is now precluded from resorting again to the court for a determination of the same question formerly raised by him.

In *Bingham* v. *Kearney,* 136 Cal. 175, 177, the Supreme Court of that State said, in part, as follows:

"She is now met by the presumption that all the facts and matters in controversy were disposed of in the former suit, and the further presumption that the judgment in the former suit is correct. If she failed to assert her claim properly, or to present the proper evidence in the first suit, she will not now be permitted in a second to litigate it. The principles herein stated are elementary. They are stated in the late case of *Quirk* v. *Rooney,* 130 Cal. 510."

Corpus Juris, in summarizing the decisions on this point and referring to cases of mandamus, says:

"It is well settled that a final judgment rendered upon the merits of an application for a peremptory writ of mandamus comes within the principle of res judicata, and is a bar to another application for the same writ by the same party under the same circumstances, or to another action involving the same issues and in which the same relief is sought. But where the decision does not proceed upon the merits it is not a bar; and it has also been held that, where mandamus will not lie as of strict right, but may be refused in the discretion of the court, a denial of that remedy does not bar a subsequent action." 34 C. J. 760.

Here the writ sought by Balasquide in case No. 439 was not refused by the court in the exercise of its discretion, but because Balasquide, having asserted his right and having had an ample opportunity to prove his allegations, failed to do so.

The foregoing would be sufficient for a reversal of the judgment appealed from as regards Balasquide, but the determination of the case is complicated by the affirmative relief sought by the interveners, and we must consider the case further.

The first of the assignments of error submitted is not, in our opinion, well founded. Under the authority of *Vallada-res* v. *Berríos,* 38 P.R.R. 613, we are inclined to believe that Balasquide could have resorted to mandamus in order to enforce a right of the character involved herein.

The second assignment is formulated thus:

"The court erred in failing to sustain the motion to dismiss the petition in mandamus, and in failing to hold in this proceeding that the private documents alleged to have been subscribed by Víctor Martínez were only mere orders to the Treasurer to withhold the check. And inasmuch as it is to be supposed that when such orders were given, the check was about to be issued in favor of Víctor Martínez, such an order of payment or check should have been subscribed by the heirs of Víctor Martínez or by himself, if alive, but never to be used as an order of payment to the Auditor in contravention of the Regulations of the Auditor of P. R."

There are five documents involved, but all of them are similarly worded. It will suffice to transcribe one of them, the first, which reads as follows:

"I, Víctor Martínez, of age, an employee of the Municipality of Cataño, P. R. and resident of this city, in consideration of the sum of ONE HUNDRED DOLLARS, the receipt of which from Agustín Balasquidez, in cash, I acknowledge, do hereby transfer and assign to said gentleman the total amount of my compensation or salary which as such municipal employee is due to me for the month of June, 1930.

"By virtue of the agreement entered to that effect, I hereby authorize the Municipal Treasurer, Dr. Fernando Boneta, to deliver to said Mr. Agustín Balasquide, in view of this authentic document evidencing said assignment, my check for compensation or salary as such municipal employee of this city of Cataño, P. R., pertaining exclusively to the aforesaid month. (Sgd.) Víctor Martínez, Municipal Employee.—(Sgd.) Dr. Boneta, Municipal Treasurer."

In opposition to the assignment of error, the appellee Balasquide maintains that an actual sale is involved, it being the duty of the Municipal Treasurer to effect the payment of the salary sold. However, even though in the first part of the instrument it is said that the amount of the salary is

assigned and transferred, what the treasurer is authorized to do in the second paragraph is to deliver the check, which as is known, is issued in the name of the officer who renders the service, the indorsement of such person or of his heirs, in the event of his death, being required in order that the proceeds may be collected by another person.

The third assignment is as follows:

"That the court committed error because the documents presented by the plaintiff Agustín Balasquide for collection, were private documents, and the Auditor must request the presentation of authentic documents, before a notary, or public deeds, in order to be authorized to order the payment."

At the trial, the heirs of Martínez insistently objected to the admission in evidence of the instruments of assignment, on the ground that they were not public or authentic documents in themselves.

In *Valladares* v. *Berríos, supra,* section 17 (*e*) of the rules promulgated by the Auditor of Puerto Rico for the guidance of the municipal auditors was transcribed thus:

"Municipal Auditors may not issue warrants in favor of persons who are not direct creditors of the municipality, or their heirs in case of death; nor shall they acknowledge assignments of earnings of any kind from one person to another, always issuing every warrant in favor of the person who rendered the service or supplied the materials, or his heirs, unless by mutual agreement the assignments are made by authentic document or deed before a notary, it being the duty of the municipal auditor in this case to retain a copy of the said instrument or document as proof of the assignment."

Therefore, assignments may be acknowledged by the municipal auditors only when the same are embodied in an authentic document or deed, and here only private documents are involved.

The district court, over the objection of the interveners, permitted that evidence be introduced acknowledging as authentic the signatures appearing at the foot of the instruments, and it is maintained that once the signatures were

thus acknowledged it can not be denied that authentic documents are involved.

We do not agree. This is a mandamus proceeding. The legal situation to be considered is the one existing at the time the proceeding was brought against the respondent, and not thereafter. The authenticity should have been complete before resort was had to the court.

What raises some doubts in our minds on this aspect of the case at bar is the circumstance that, even though the instruments did not have the character of authentic documents as to other persons, perhaps it should be concluded that they had such character as regard the defendants, since they bear the signature of the treasurer of the municipality of which said defendants are officers.

Lastly, it is maintained as a fourth ground of appeal that the court erred in regarding as valid the assignment of the salary for January, when there was involved an act which is void as against public policy, since the assignment was made before the salary became due.

It is remarkable, indeed, that the documents should be undated. It was stated that they were executed on the last day of each month, but that as regards the one pertaining to January, since the officer died on the 27th of said month, it must be acknowledged that it had been executed previously, and there was some doubt as to the exact date of execution.

Therefore, it must be concluded that at least one of the documents on which Balasquide's claim is based and to which full credit was given by the district court, is void.

In *Schmitt* v. *Dooling*, reported in 36 L.R.A. (N. S.) 881, 885, the Court of Appeals of Kentucky said:

"It has been frequently held that a public officer may not anticipate his salary; that is, that he cannot assign it before it is due. The reason for this rule, as announced by all the courts of this country, and of England, is that it is against public policy to permit it to be done, upon the ground that it would tend to impair the service to permit an officer to draw in advance his pay therefor; that

he would lose interest in his work; and that his service would accordingly be less valuable.

"In *Holt* v. *Thurman*, 111 Ky. 84, 98 Am. St. Rep. 399, 63 S. W. 280, this court had under consideration the right of a city attorney employed at a fix salary, to assign the unearned portion thereof, and, in holding that it was against a sound public policy to permit him to do so, adopted the text upon this subject as found in the American & English Encyclopedia of Law, vol. 2, 2d. ed. p. 1033, as expressing the best reason for the rule. This text is as follows: 'The protection thus extended to those engaged in the performance of public duties is not based upon the ground of their private interest, but upon the necessity of securing the efficiency of the public service, by insuring that the funds provided for its maintenance shall be received by those who are to perform the work at the periods appointed for their payment. The assignment of such funds before they are due impairs the efficiency of the public service, and is void, both in law and equity, as being against public policy.'

"An examination of all the authorities which hold that it is against public policy to permit a public officer to assign the unearned portion of his salary shows that they are rested upon the same principle, to wit, that such asignments, if countenanced, would tend to impair the efficiency of the service."

And in *Bangs* v. *Dunn*, 66 Cal. 72, the Supreme Court of that State said:

"Appellant contends that the English rule, which holds that an assignment by an official of his salary before it becomes due is contrary to public policy and void, has no application in the condition of things in this country. It was so held in *State Bank* v. *Hastings*, 15 Wisc. 78. On the other hand, it was decided by the court of appeals of New York, that such an assignment was against public policy and void. (*Bliss* v. *Lawrence*, 58 N. Y. 442.) We think the conclusion of the New York court is sustained by the more satisfactory reasoning."

Hence, even though the defense of *res judicata* were not upheld, the judgment appealed from must be reversed. In cases of mandamus the right of the petitioner and the duty of the respondent must be clear, patent, in order to justify

the issuance of the writ, and such a showing has not been made here.

Now, then, taking all the foregoing into consideration, can the writ be issued in favor of the heirs of the deceased officer?

In the first place, it might be asked whether in view of the fact that the former proceeding in mandamus instituted directly by the heirs of Martínez had been dismissed, the matter was not also adjudged as to them. The answer must be in the negative, for that case was not decided against them upon the merits, as it was against Balasquide. The petition of the heirs was dismissed simply because they did not comply with the necessary requisite of a previous demand on the respondents. Upon compliance with that requisite and payment being refused, they could have validly sought the aid of the court.

The second question that might be asked is whether they showed a clear right to receive the earnings involved. In our judgment, this question should also be answered in the negative.

It is impossible to fail to acknowledge some weight to the evidence adduced by Balasquide. We have already said that the remedy of mandamus can be properly resorted to only when a clear right on the part of the petitioner and an imperative duty on the part of the respondent are involved. Here four of the instruments of assignment at least cast a shadow upon the right of the heirs to receive the salary earned by their ancestor, and under such circumstances mandamus does not lie.

Until the existing dispute between the parties has been privately settled among themselves, or until a competent court has decided the same in a proper proceeding, none of the petitioners herein will have a clear right to collect which the officers of the debtor municipality may be bound to acknowledge.

In virtue of all the foregoing, the judgment appealed from must be reversed, and the issuance of the writ either in favor of the petitioner or of the interveners must be denied, all without special imposition of costs.