THE PEOPLE, ETC., DEFENDANTS IN ERROR, *v.* FREDERICK H. WENTZ, PLAINTIFF IN ERROR.

*Felony—Evidence—Confessions of Criminal.*

Where a prisoner, being arrested and imprisoned on charge of having committed a felony, makes a free statement of his guilt, without any influence having been used to induce the confession, or to interfere with the free voluntary action of the prisoner's mind, such a statement may be used as evidence on the trial of the prisoner for the alleged felony.

The remark of an officer to the prisoner that he was in a bad fix, that he was caught at last, and an inquiry as to who were the others with him, had no tendency to influence the mind of the prisoner improperly, so as to render his confession thereupon inadmissible as evidence against him.

*D. J. Mitchell* for Plaintiff.

*O. W. Chapman,* District Attorney, for the People.

DAVIES, CH.J.—The prisoner was tried on the civil side of the Supreme Court, at a Circuit held in the county of Broome, in March, 1867, and convicted of the crime of arson; and the General Term denied a new trial, and the Defendant was sentenced to the State prison.

He now brings a writ of error to this Court. It is claimed that the Court, upon the trial, erred in allowing the People to prove the confessions made by the prisoner to the witness Martin, who at the time was a policeman.

It is also urged that the Court erred in permitting the same witness to testify to another conversation with the prisoner, in which conversation the prisoner requested the witness to go and request the prisoner's father to visit him at the jail.

It is also claimed that the Court erred in permitting the witness to testify as to what occurred when the father and the counsel of the prisoner were present; and it is also claimed that the Court erred in permitting the People to give evidence of a distinct and different felony committed by the prisoner, other than that charged in the indictment, and for which he was upon trial.

33.

The witness did not have the prisoner in his charge, but went into the rooms occupied by him in the jail.

He testified that as he went into the room he made the remark that he (the prisoner) was in a bad fix, and had got caught at last, or something like that; and that the witness then asked him to tell who the others were; and in the course of the conversation with the prisoner, he (the prisoner) asked the witness if he had got Delany; he told him " no."

The prisoner then asked him if he had got Delany and David Gray; and the witness asked the prisoner if they knew anything about it, and he said they did.

The witness then asked the prisoner what was the first fire he was interested in. He said the first fire was his father's barn, that he had anything to do with, and that the next was Pugsley's barn, near by, and he said that he and David Gray set that on fire.

The witness testified that he made no promise to the prisoner, nor held out to him any inducements whatever to make the confession.

The confessions of the prisoner were wholly voluntary, and made uninfluenced by any threat, menace, promise, or other influence.

It is no ground of objection that they were made to a policeman. He had not arrested the prisoner, and did not have him in his custody at the time of this conversation.

Selden, J., in the case of The People *v.* McMahon (15 N. Y. 384), very clearly states the principle which should govern in the admission of the confessions of persons charged with crime. He says: " The first distinction which the law makes is between a declaration or statement made before, and one made after the accused was conscious of being charged with or suspected of the crime. If before, it is admissible in all cases, whether made under oath or without oath, upon a judicial proceeding or otherwise; but if made afterwards, the law becomes at once cautious and hesitating. The inquiry then is, was it voluntary? For unless entirely voluntary, it is held not to be admissible." He then

proceeds to define what is meant by the term voluntary. He says: " The word is evidently not in all cases used in contradistinction to compulsory, because a confession obtained by either threats or promises, from any one having authority over the accused, or concerned in the administration of justice, is uniformly held to be inadmissible. However slight the threat, or small the inducement thus held out, the statement will be excluded as not voluntary. It is plain, therefore, that in such cases at least, by voluntary is meant proceeding from the spontaneous suggestion of the party's own mind, free from the influence of any extraneous disturbing cause." And the learned Judge states the reason of this exclusion to be, that when the law rejects a disclosure made under oath by a person charged with crime, it does so, not because any right or privilege of the prisoner has been violated, but because it is deemed unsafe to rely upon it as evidence of guilt. And this is strongly to be inferred from that class of cases in which it has been held, that although a confession has been obtained by stratagem, by fraud, by violation of confidence, or even of an oath, still, if reliable, the law will avail itself of it.

And he cites, in support of this principle, Barley's case (cited in Phillipps on Ev., 427) as having been decided in Easter Term, 1818; mentioned also by Roscoe & Starkie, who say the conviction was afterwards approved of by the Judges.

When the prisoner was told untruly, and as an artifice, when in jail, that his accomplices were in custody—upon hearing this, which was said to induce a confession, he confessed.

The confession was admitted in evidence. In Rex *v.* Derrington (2 Car. & Pa. 418), the prisoner, while in jail, having written a letter to his father, asked the turnkey to put it into the post, which he promised to do ; but instead of this, the turnkey delivered it to the magistrates. The letter was offered in evidence, and objected to, but admitted.

So in Rex *v.* Shaw (6 Car. & Pa. 372), where the person to whom the confession was made had taken an oath that he would not reveal it ; this was held to be no objection to the evidence.

A confession is admissible although it is elicited by questions put to the prisoner by a magistrate, constable, or other person.

The leading authority on this point is Wild's case (1 Moody, C. C. 452).

The person having the prisoner (a boy about fourteen) in charge, told him to kneel down and tell the truth in the presence of the Almighty. He did so, and confessed to pushing the children, with whose murder he was charged, into the pit.

At a meeting of all the Judges in 1835, four only absent, they held that the confession was strictly admissible.

In Thornton's case (1 Moody's C. C. 27, Trin. Term, 1824), which came before the Judges, a confession was held admissible, made by a boy only fourteen years old, to a chief officer of police, by whose directions he had been apprehended without a warrant, and obtained in answer to questions put to him by the officer, and at a time when the boy had been without food for nearly an entire day. Seven of the Judges held the confession rightly received, for the reason that no threat or promise had been used. Three Judges were of a contrary opinion. In Gibney's case (Jebb's Crim. Cases before the Twelve Judges of Ireland, p. 15), decided in 1822, a confession was held unanimously admissible which was elicited by questions put to the prisoner by two constables, in whose custody the prisoner then was on his way to jail. One asked him, " Did you kill the child ? " The other, " Were you not a terrible man to do such a thing ? "

Both these questions were asked before the confession was made. The constables told him several times, before he confessed, what a terrible offence he had committed—that it was a terrible thing for a man to murder his own child.

For the cases of a similar character, see Joy on Confessions, p. 34, et passim—Law Library, vol. 24, N. S.

So also a confession is admissible although it is elicited in answer to a question which assumes the prisoner's guilt, or is obtained by artifice or deception.

In Thornton's case (1 Moody's C. C., p. 28), a chief officer of police, by whose directions the prisoner had been apprehended,

said to the prisoner in custody, that "in consequence of the false-hoods the prisoner had told, and the prevarications he had made, there was no doubt but that he had set the premises on fire;" and after questioning him whether any person had been connected with him, added: "He would not have told so many falsehoods if he had not been concerned in it;" and again asked, "Whether any person had induced him to do it?"

The prisoner then made a confession. Seven out of the ten Judges held that the confession was rightly received.

Lord Denman, Ch.J., in Arnold's case (8 Car. & P. 622), says that the true test of the admissibility or inadmissibility of a con-fession is, whether any inducement was held out to the prisoner to confess himself *untruly* guilty.

Applying these principles to the confessions made by this pris-oner, we see that none of them were overlooked or misapplied in the admission of them. The utmost that can be said of any remark made by the officer was, that it assumed the prisoner's guilt.

This, we have seen, furnishes no ground for the rejection of the confession. There being no inducement, promise, threat, or menace used to obtain the confession, or influence its being made, it is very clear, upon principle and authority, that it was properly admitted.

We do not see that any rule of evidence was violated in admit-ting the answer of the witness, that Becker, the counsel of the prisoner, was present in the jail with him at the same time the witness and the father of the prisoner were present.

I do not understand the witness as detailing anything the pris-oner said to his counsel; and he must certainly have been asked that, or attempted to give that, before the principle could be invoked that such statement was a privileged communication.

Such privilege has no application to anything that was given in evidence, or offered to be given in evidence upon this trial. Besides, any statement made by the prisoner to Becker, his coun-sel, in the presence and hearing of the prisoner's father, and of the witness, could not partake of the character of a privileged communication.

Neither is there any foundation for the objection now urged, that the Judge upon the trial admitted evidence of a distinct felony not charged in the indictment, to wit, that the prisoner burned his father's barn.

When the witness was asked about a further conversation with the prisoner, he testified: " I then asked him what was the first fire he was interested in." This was objected to, received, and excepted to. The witness answered: " He said the first fire was his father's barn, that he had anything to do with, and that he and Jerome Dean——"

Here the witness was. stopped, and did not further answer the question. When the witness was again asked directly what the prisoner said about he and Dean setting the fire, it was objected to on the ground that the question related to another offence, and one for which he was not on trial. The Court sustained the objection, and excluded the evidence.

It is thus seen that the moment the attention of the Court was called to the ground of the objection, the evidence was excluded. And if the counsel for the prisoner had thought the former answer, given in part, was open to the same objection, it was his duty to have moved the Court to strike out that testimony; and if the same had been refused, to have taken an exception.

On a careful consideration of all the exceptions taken upon the trial, we think them untenable, and that the judgment of the Supreme Court must be affirmed.

GROVER, J.—The question whether the motion for a new trial, on the ground of newly-discovered evidence, should have been granted, is not reviewable in this Court. Although the indictment was removed into the Supreme Court, and tried at the Circuit, that does not enlarge the powers of this Court.

Questions of law only can be examined here (Selden *v.* Delaware & Hudson Canal Co., 29 N. Y. 635). This motion was addressed to the sound discretion of the Court, and its determination by the Supreme Court is final. None of the exceptions to the charge were well taken. It is entirely obvious that the testimony

of Wentz, that the Defendant was at the store from seven o'clock in the evening of the night of the fire until the alarm was given,— and the testimony of the witnesses, that he was passing the streets to the engine-house, where he arrived some little time before the alarm, and where, they testify, he was at the time of the alarm,— could not all have been true. It was in direct conflict, and one or the other must have been false, either through mistake or by intention.

Although the Judge applied the former qualification to the testimony of the first witness, and the latter to the testimony of the People's witnesses, no question of law was thereby presented. The remarks of the Judge, that the testimony of Young did not corroborate that of Wentz, as he swore he did not see Defendant after six o'clock in the evening in question, was a mere statement of the Judge's opinion of the testimony, and was not the subject of an exception. Besides, upon the Defendant's counsel insisting that Young had testified differently, the Judge submitted the entire question to the jury. This would have cured the error, if one had been committed. Upon the return of the jury to the bar, and announcing that they were unable to agree upon a verdict, it was discretionary with the Court either to discharge them or send them back for further deliberation.

It was proper for the Court to inform them that it could see no good reason why they should not agree.

The exception to the testimony of the witness Martin presents the question, whether the confessions of the Defendant to him were voluntary. The Defendant had been arrested, and was confined in jail when the principal confession was alleged to have been made. The witness was a police officer, and went into the room where the Defendant was confined, and told him he was in a bad fix, and had got caught at last, and asked him who the others were, and then the Defendant made the confession.

It is clear that there was nothing like a promise, or any appeal to any hope of favor presented to induce a confession. Nor was there anything like a threat made, in case the Defendant did not

confess—nothing calculated to interfere with the free voluntary action of the Defendant's mind.

This is all the law requires to render the confession admissible. The inquiry always is, was the confession made under circumstances making it reliable for truth? and if so, it is admissible, irrespective of the means by which it was obtained (The People *v.* McMahon, 15 N. Y. 384, and cases cited). The remaining exception necessary to examine, it is claimed by Defendant's counsel, presents the question whether, upon the trial of a party indicted for a particular crime, it is competent for the People to prove him guilty of another crime of the same or of a different kind. This question admits of no discussion. It is entirely certain that such proof is inadmissible. Cases may occur where, in order to show the guilt of the party of the offence for which he is upon trial, it may be necessary to give evidence that may tend to show him guilty of another offence of like character. Upon a trial for forgery, to establish the intent, it may be necessary to prove that the Defendant had in his possession, or had uttered, other false or forged instruments. This is not to prove him guilty of another crime, but proof to show him guilty of that for which he is upon trial. The real inquiry in this case is, whether the exception presents this question.

The case states : " I then asked him what was the first fire he was interested in? He said the first fire was his father's barn, that he had anything to do with, and that he and Jerome Dean——"

Objected to, on the ground that it is giving evidence of another offence. No decision of the Court appears to have been made.

The prosecuting attorney at once proposed a different question. This fails to show that any evidence tending to show the party guilty of another offence was given after the ground of the objection was stated.

At another part of the examination of the same witness, he stated : " He told me how he and Dean set the fire." The prosecuting counsel : " How was that ? "

The Defendant's counsel objected, upon the ground above

stated.    The Court decided that it was not admissible as inde-pendent testimony, and if admissible at all, it was only so as part of a conversation already related; that he thought the evidence was admissible, but as a matter of prudence he would reject it. Then it is manifest that the illegal evidence was not admit-ted, and did not go to the jury, although at the moment the learned Judge appears to have entertained the erroneous idea that it was competent for a party to prove, by the admissions of his adversary, facts which were not competent to be proved by other evidence, when a part of the conversation in which such admissions were made is admissible.    Yet he did not act upon such an idea.

The evidence was excluded; although the jury may possibly have been misled by this idea, and thus induced to give some im-portance to what had been before proved to have been said by the Defendant in relation to the fire at his father's barn, yet it does not affirmatively appear that they were so misled.

It therefore follows that the exception is not available, upon the ground that the exceptions do not show that evidence was re-ceived of another offence, against the objection of the Defendant, properly made.

The judgment must be affirmed.

All affirm.

JOEL TIFFANY,
State Reporter.