AGUSTÍN BALASQUIDE, peticionario y apelado, v. MANUEL LU-
JÁN y AGUSTÍN ESPINOSA, SECRETARIO-AUDITOR y ALCALDE-
TESORERO DEL MUNICIPIO DE CATAÑO, respectivamente, de-
mandados; y FRANCISCA MIRANDA en su propio nombre y
como madre con patria potestad sobre su hijo VÍCTOR LUIS
MARTÍNEZ, interventor y apelante.

No. 6081.—*Sometido:* Mayo 12, 1933.—*Resuelto:* Julio 22, 1933.

*L. Santiago Carmona*, abogado de los apelantes; *José C. Jusino*, abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Agustín Balasquide solicitó de la Corte de Distrito de Bayamón que librara un auto de *mandamus* dirigido a Manuel E. Luján y a Agustín Espinosa, Secretario-Auditor y Alcalde-Tesorero del Municipio de Cataño, respectivamente, ordenándoles la inmediata expedición de los libramientos y certificaciones de pago de los salarios devengados por el Secretario-Auditor que fué de dicho municipio Víctor Martínez durante los meses de junio, octubre, última quincena, noviembre y diciembre, de 1930, y enero, 1931, veinte y seis días, ascendentes a $436.58.

Como Víctor Martínez había fallecido, la corte ordenó que se diera traslado de la solicitud a sus herederos. Éstos comparecieron y formularon demanda en oposición a que se expidiera el auto a favor de Balasquide y en solicitud de que se librara a su favor. Negaron que su causante hubiera firmado documentos auténticos vendiendo sus sueldos y levantaron las siguientes cuestiones:

1, No procedencia del *mandamus,* porque lo que se reclama es la ejecución de un contrato;

2, Falta de causa de acción porque de la petición lo que surge es una orden de retención de cheques y no una orden de pago;

3, Falta de causa de acción porque los documentos de que se trata no son auténticos según exigen los Reglamentos de la Auditoría;

4, Falta de causa de acción porque el documento correspondiente a enero demuestra que se otorgó para justificar una cesión de sueldos que no se habían devengado aún, lo que es contrario a la política pública, y

5, Excepción de cosa juzgada.

El auto fué expedido y en el día señalado para su vista comparecieron todas las partes interesadas. Los demandados expusieron que ellos no lo habían cumplido porque existía un conflicto de reclamaciones entre el peticionario y los interventores, esperando para actuar que ese conflicto fuera resuelto por la corte, y, además porque el municipio carecía de fondos suficientes para ello. Se practicó prueba, y la corte finalmente dictó sentencia declarando con lugar la solicitud. Apelaron los interventores y en su alegato señalan cinco errores que corresponden a las cinco cuestiones ya mencionadas que suscitaron en la corte de distrito y que ésta resolvió en contra suya.

■■ Al discutirse este caso en el seno del tribunal surgió la cuestión de si hay o no derecho a intervenir en casos de *mandamus.*

Resumiendo la jurisprudencia sobre la materia dice Corpus Juris:

''En un número de decisiones se ha resuelto o dicho que no se

permitirá una intervención en ausencia de autoridad estatutaria para ello aun cuando exista derecho o interés en la cosa objeto del litigio. Y se ha resuelto que no se permitirá una intervención cuando de acuerdo con el estatuto las únicas alegaciones autorizadas en un procedimiento de *mandamus* son el auto y la contestación. Por otra parte en otros casos en que no se mencionaba autoridad estatutaria se resolvió o dijo que se podía permitir una intervención al demostrarse debidamente el interés que se tenía en la cosa objeto del litigio. Y de conformidad con los estatutos de algunas jurisdicciones, cualquier persona o corporación que por tener interés pudiera ser unida como una parte necesaria o adecuada en procedimientos de *mandamus*, de ordinario se le permitirá que intervenga en el mismo. No obstante, sea como fuera, debe demostrarse debidamente que existe un interés substancial en la cosa objeto del litigio para autorizar una intervención." 38 C. J. 856.

Para sostener la negativa se citan en las notas al texto casos de Illinois, Missouri, Iowa y Oklahoma, y para mantener la afirmativa se citan casos de Arkansas, Nebraska, Carolina del Norte, Texas, Virginia, Connecticut y Puerto Rico. En los Estados de Louisiana y Kentucky, se encuentran decisiones en un sentido y en otro.

La decisión nuestra que se cita se dictó en el caso de *Puente v. Foote, Juez de Distrito,* 17 D.P.R. 889, 891. En ella se dijo:

"La intervención de esas personas fué propiamente admitida porque la regla general en la jurisprudencia americana para estos casos, es permitir la intervención de personas a quienes pueda afectar la resolución que se dicte. (26 Cyc., 418.)

"Además, esta Corte Suprema en casos análogos como son los autos de *certiorari* ha permitido esa intervención siempre que se la ha demostrado estar interesado en el asunto."

En el caso de *Conlee v. Clay City et al.,* de Kentucky, reportado en 102 S. W. 862, se dijo:

"La corte acertadamente autorizó que los dos contribuyentes y electores de la ciudad fueran hechos partes y defendieran el litigio, al aparecer que existía colusión entre los demandados y el demandante. El alcalde y el concejo son meramente los representantes de los vecinos de la municipalidad y cuando se confabulan con el de-

mandante es propio que los ciudadanos de la ciudad presenten su defensa, si así desean hacerlo, ya que de lo contrario la corte no conocería la verdad.''

En el de *Johnston et al.* v. *Conway*, 237 S.W. 80, 82, la Corte Suprema de Arkansas, decidió:

''A una petición de los apelantes para que se les hiciera parte en los procedimientos y alegando que ellos eran contribuyentes y que estaban interesados en el resultado del litigio, petición que estaba debidamente jurada, la corte resolvió acertadamente al permitir que los apelantes intervinieran y que se les tratara como partes demandadas. Además no hubo réplica alguna a la solicitud de los apelantes para que se les hiciera partes en el litigio. No habiendo la apelada presentado objeción alguna en la corte inferior a la resolución de la corte autorizando que se hiciese a los apelantes partes demandadas, ella no puede ahora suscitar ante esta corte esa cuestión por primera vez. Hadley v. Bryan, 70 Ark. 197, 66 S. W. 921; Williams v. Bennett, 75 Ark. 312, 88 S. W. 600, 112 Am. St. Rep. 57.''

La Corte Suprema de Nebraska en el caso de *First National Bank of Neligh* v. *Lancaster et al.*, 74 N. W. 858, aplicando un precepto general contenido en el Código de Enjuiciamiento Civil del estado, similar al artículo 72 del nuestro, se expresó así:

''El peticionario insiste en que el banco es un mero intruso en el caso y que no debe permitírsele que ataque la sentencia ya sea correcta o incorrecta. Pero creemos que no se cometió error alguno al permitir la intervención. El auto de *mandamus* ya ha dejado de ser un auto privilegiado. Al ser el remedio adecuado es expedido como cuestión de derecho a instancias de un litigante particular. State v. Commissioners of Butler Co., 11 Kan. 67; Fisher v. Charleston, 17 W. Va. 63; State v. Commings, 17 Neb. 311, 22 N. W. 545. El artículo 50 *a* del Código lee como sigue: 'Cualquier persona que tenga o alegue tener interés en el asunto en litigio, en el éxito de cualquiera de las partes o algún derecho en contra de ambas, en cualquier asunto que esté pendiente o que se inicie en cualquiera de las cortes del estado de Nebraska, podrá ser parte en una acción entre cualesquiera otras personas o corporaciones, ya asociándose al demandante para reclamar lo que se pretenda en la petición o uniéndose al demandado para oponerse a las pretensiones del de-

mandante o pidiendo algo en sentido adverso a las reclamaciones de demandante y demandado, bien antes o después de surgir la controversia en el litigio y antes de que dé comienzo el juicio'.''

La propia Corte Suprema de Nebraska en un caso decidido anteriormente, *State ex rel. Graber* v. *Matley and others,* 24 N. W. 200, había dicho:

''Es regla bien establecida que en materias de mero derecho público el pueblo es la verdadera parte interesada y en tales casos la negativa ilegal por parte de los funcionarios de actuar tiene tanto interés para un vecino como para el otro. People v. Collins, 19 Wend. 56; County of Pike v. State, 11 Ill. 202; The King v. Commissioners, 1 Term R. 146; Moses, Mand. 197, 198. En tales casos basta que el peticionario demuestre que es vecino y que como tal está interesado en el cumplimiento de las leyes. State v. Stearns, 11 Neb. 104; S. C. 7 N. W. Rep. 743; State v. Peacock, 15 Neb. 442; S. C. 11 N. W. Rep. 685; Hall v. People, 57 Ill. 313; State v. Judge, 7 Iowa, 202; Hamilton v. State, 3 Ind. 458; People ,v. Halsey, 37 N. Y. 348; State v. Shropshire, 4, Neb. 413. Y si cualquier vecino puede iniciar procedimientos para garantizar el cumplimiento de las leyes, cuando la decisión del caso podría afectar a todos los vecinos del condado, cualquier otro vecino ciertamente tiene el derecho de demostrar a la corte cualquier hecho que pueda destruir la acción. Esto hubiese sido así si se hubiera expedido una orden para mostrar causa en vez de un auto alternativo y el hecho de que se expidiera el auto no impide a la corte recibir una solicitud que demuestre que el auto fué expedido bajo una relación de hechos errónea. Por tanto, resolvemos que la solicitud de intervención fué hecha debidamente.''

Otras decisiones podrían citarse. La gran mayoría se refiere a intervenciones para oponerse a la expedición del auto, pero en Texas hemos encontrado una en que el interventor sustituye al demandante y obtiene finalmente que el auto se expida a su favor. Nos referimos al caso de *J. C. Wright* v. *Neathery, Adm'r., and another,* reportado en 14 Tex. 212. La Corte Suprema, por medio de su Juez Wheeler, se expresó así:

''Dos errores han sido señalados para solicitar la revocación de la sentencia: primero, que habiéndose declarado con lugar la excepción previa a la petición de los demandantes no existía pleito

pendiente y por ende que no podía haber una intervención. Segundo, que habiéndose hecho la mensura para el demandante Harper, ella no podía sostener la reclamación del interventor. Al primer señalamiento podría contestarse que si bien es cierto que la excepción previa fué declarada con lugar, no se dictó sentencia basada en ella a favor de la parte demandada. Se siguió el caso para dar al demandante la oportunidad de enmendar y se hallaba aún pendiente cuando el apelado intervino. El demandante pudo aún enmendar su petición y proseguir su litigio hasta sentencia final sobre los méritos si así lo hubiese creído prudente, y el hecho de que dejara de hacerlo así no podía privar al interventor de su derecho a sostener su reclamación, la que había sido presentada antes de dictarse sentencia final en el caso. En su consecuencia la objeción no está bien fundada.''

■■■ Esclarecido este punto, procederemos al estudio y resolución de los señalamientos de error, comenzando por el último, o sea el que se refiere a la *cosa juzgada*. Dijo la corte de distrito en la relación del caso y opinión que sirve de base a su sentencia:

''Se invocó por la interventora la defensa de *res judicata*. Se refiere al caso No. 439 de Francisca Miranda et al. vs. Agustín Espinosa et al. y Agustín Balasquide, interventor, sobre *mandamus*. En aquel caso se declaró sin lugar la petición y también la demanda de intervención por falta de pruebas. La sentencia, como se observa, no constituye cosa juzgada en el presente caso, entre otras razones porque ningún conflicto de intereses entre Francisca Miranda y Agustín Balasquide quedó resuelto por aquella sentencia; porque para que haya cosa juzgada es requisito indispensable que haya habido decisión en un pleito, sobre lo que haya sido objeto de otro pleito anterior; porque en el caso anterior, o sea el número 439 no fué resuelto el hecho fundamental o cuestión esencial que aquí es resuelto por primera vez. Véanse *Virella* v. *Virella*, 22 D. P. R. 693; *Ninlliat* v. *Suriñach*, 27 D. P. R. 74.''

La demanda en el caso No. 439 fué· establecida por los Herederos de Martínez contra los mismos demandados en este pleito, en solicitud de que se expidiera un auto de *mandamus* ordenándoles el pago a dichos herederos de los mismos haberes de que aquí se trata. Pidió intervenir e intervino el aquí demandante Balasquide, alegando los mismos

hechos que ahora alega en este pleito y pidiendo que la so-
licitud de los Herederos de Martínez fuera denegada y en
su lugar se expidiera el auto ordenando que el pago se ve-
rificara a su favor en su carácter de cesionario de Martínez.

El pleito No. 439 fué a juicio y la Corte de Distrito de
Bayamón lo resolvió por sentencia de 27 de noviembre de
1931, que es firme, declarando sin lugar tanto las pretensio-
nes de los Herederos de Martínez como las del interventor
Balasquide. De la relación del caso y opinión en que se
funda la sentencia, transcribimos:

"Agustín Balasquídez alega, en síntesis, en su demanda de in-
tervención, que Víctor Martínez, 'le hizo cesión y traspaso de sus
sueldos o salarios durante los meses de junio, octubre, noviembre y
diciembre de 1930 y enero de 1931 otorgándole documentos de venta
que fueron notificados y firmados por el Tesorero del Municipio de
Cataño los que montan a la suma de $436.58, la que es de su exclu-
siva propiedad; que ha requerido de pago a la demandada y se han
negado porque el municipio carece de fondos y porque tienen cier-
tas dudas sobre la forma en que dicho pago debe ser hecho debido
al fallecimiento de Víctor Martínez, y que los demandados deben ser
obligados a que hagan los libramientos correspondientes y el debido
pago a su favor de los $436.58 en cuestión.

"Reanudada la vista del caso el 20 de noviembre de 1931, con
asistencia de todas las partes y sus abogados, los peticionarios prac-
ticaron prueba ofreciendo únicamente la documental del decreto de
esta Corte de 9 de junio de 1931, declarando a los aquí peticionarios
y a Victoria Martínez los únicos y universales herederos de Víctor
Martínez. Terminada su prueba, los demandados y el interventor
alegaron que no tenían prueba que ofrecer; y el caso quedó con-
cluso para sentencia.

"Como se observa, el único hecho de la petición que quedó pro-
bado mediante evidencia, fué la capacidad legal de los peticionarios
para establecer el presente recurso. Y, por admisión de los deman-
dados, que Víctor Martínez falleció y era Auditor del Municipio de
Cataño; que disfrutaba de un sueldo de $1200 anuales; que se le
adeudan los salarios totales de junio, noviembre y diciembre de 1930,
la mitad del de octubre de 1930, y $86.58 correspondientes a enero
de 1931; que ese dinero no ha sido pagado o satisfecho.

"Cuando se reclama el sueldo de un funcionario municipal, figu-

rando la asignación en el presupuesto corriente, el deber del contador municipal de expedir los libramientos necesarios es un deber ministerial. 18 R. C. L. 221, 224; Buitrago v. Medina, 33 D. P. R. 433. En esos casos procede el auto de *mandamus*. Pero para que una solicitud de *mandamus* pueda ser tenida en consideración, es necesario que antes se haya suplicado al demandado que ejecute el acto a cuyo cumplimiento se trata de obligarle y que éste se haya negado a ello. 38 C. J. 579, párr. 53; Zavala v. Consejo, 9 D. P. R. 211; Morales v. Wilson, 16 D. P. R. 751; Coll v. Arsuaga, 24 D. P. R. 585; United States v. Boutwell, 84 U. S. 607; 2 Bouvier's Law Dictionary; Crandall v. Amador County, 20 Cal. 72; Oraville v. Plumas, 37 Cal. 362; People v. Romero, 18 Cal. 92; Tapping on Mandamus, 282.

"Los peticionarios alegaron que los demandados fueron requeridos. Los demandados negaron específicamente tal hecho. Ninguna prueba presentaron los peticionarios para sostener la alegación de un previo requerimiento. Y a este respecto se ha dicho:

" 'Inasmuch as this necessary prerequisite of the law has not been complied with by the applicants for the writ of mandamus in this case, the court might well decline to go further in the matter.' Zavala v. Consejo, 9 P. R. R. 191, 194.

"La solicitud debe ser, y es, declarada sin lugar. Y no habiendo el interventor probado las alegaciones de su demanda, ésta es asimismo declarada sin lugar.''

A nuestro juicio existe entre este caso y el No. 439 ya resuelto la perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron que exige el Código Civil, artículo 1204, ed. 1930, para que surta sus efectos la presunción de cosa juzgada.

Balasquide tuvo una plena oportunidad en el caso de *mandamus* iniciado por los Herederos de Martínez para comparecer como compareció y hacer valer su derecho. Su caso se juzgó en sus méritos. "Y no habiendo el interventor probado las alegaciones de su demanda, ésta es asimismo declarada sin lugar,'' dijo y resolvió la corte de distrito. Si no presentó prueba, culpa suya fué, y no tiene ahora derecho a recurrir de nuevo al tribunal para que le resuelva la misma cuestión que anteriormente suscitara.

En el caso de *Bingham* v. *Kearney,* 136 Cal. 175, 177, la Corte Suprema del estado dijo, en parte, lo que sigue:

"Ella se confronta ahora con la presunción de que todos los hechos y cuestiones en controversia fueron resueltos en el pleito anterior y con la presunción adicional de que la sentencia en el litigio anterior es correcta. Si ella dejó de probar propiamente su reclamación, o de presentar la debida prueba en el primer litigio, no se le permitirá ahora que la ventile por segunda vez. Los principios aquí enunciados son elementales. Ellos aparecen en el reciente caso de Quirk v. Rooney, 130 Cal. 510."

Y refiriéndose a casos de *mandamus,* dice Corpus Juris, resumiendo la jurisprudencia sobre el particular:

"Es cuestión bien establecida que una sentencia final dictada sobre los méritos de una solicitud para que se expida un auto alter nativo de *mandamus* cae dentro del principio de *res judicata,* e impide que la misma parte y bajo las mismas circunstancias acuda en solicitud del mismo auto, así como cualquiera otra acción que envuelva las mismas cuestiones y en que se solicite el mismo remedio. Mas cuando la decisión no va a los méritos del caso, ella no es un impedimento (*bar*); también se ha resuelto que cuando el *mandamus* no procede como cuestión estricta de derecho sino que puede ser de negado a discreción de la corte, el hecho de que se niegue ese reme dio no impide una acción posterior." 34 C. J. 760.

Aquí el *mandamus* solicitado por Balasquide en el pleito No. 439 no fué negado ejercitando la corte su discreción, sino porque habiendo Balasquide ejercitado su derecho y tenido una amplia oportunidad para probar sus alegaciones, no lo hizo.

Bastaría lo expuesto para la revocación de la sentencia apelada en cuanto a Balasquide, pero la resolución del caso se complica por el remedio afirmativo que solicitan los interventores y debemos proseguir en su estudio.

█ El primero de los señalamientos de error no está bien fundado a nuestro juicio. Bajo la autoridad del caso de *Valladares* v. *Berríos, Auditor,* 38 D.P.R. 682, nos inclinamos a creer que Balasquide pudo recurrir al procedimiento de

*mandamus* para hacer valer un derecho de la naturaleza del que se invoca en este caso.

■ El segundo señalamiento de error se formula así:

"La Corte erró al no declarar con lugar la moción para desestimar la petición de *mandamus*, y al no estimar en este procedimiento que los documentos privados que se alega fueron suscritos por Víctor Martínez, sólo eran unas meras órdenes al Tesorero para que retuviera en su poder el cheque. Y como es de suponerse que cuando se daban esas órdenes el cheque estaba ya por expedirse a favor de Víctor Martínez, tal orden de pago o cheque debía ser suscrito por los herederos de Víctor Martínez o por el mismo *si no hubiera muerto*. Pero nunca para que sirviera de orden de pago al Auditor contrariando el Reg. del Aud. de P. R."

Los documentos de que se trata son cinco pero todos están redactados en forma igual. Bastará transcribir uno de ellos, el primero, que dice:

"Yo, Víctor Martínez, mayor de edad, empleado del Municipio de Cataño, P. R., y vecino de esta ciudad, por el presente y por la suma de cien dólares, que confieso haber recibido del señor Agustín Balasquídez, en dinero efectivo cedo y traspaso a favor de dicho señor el importe total de mis haberes o sueldo que como tal empleado municipal me corresponde por el mes de junio de mil novecientos treinta.

"Por el presente, y en virtud del acuerdo celebrado a tal efecto autorizo al Tesorero Municipal, Dr. Fernando Boneta, para que con este documento auténtico como justificante del mencionado traspaso entregue a dicho señor Agustín Balasquídez mi cheque por haberes o sueldo que como tal empleado municipal de esta ciudad de Cataño, P. R., correspondiente exclusivamente al mes arriba expresado. (Fdo.) Víctor Martínez, Empleado Municipal.—(Fdo.) Dr. Boneta, Tesorero Municipal."

Impugnando el error sostiene el apelado Balasquide que se trata de una verdadera venta, debiendo el Tesorero Municipal proceder al pago del salario vendido. Sin embargo, si bien en la primera parte del documento se dice que se cede y traspasa el importe del sueldo, en la segunda a lo que se autoriza al Tesorero es a la entrega del cheque, que como es sabido se expide a nombre del funcionario que presta el ser-

vicio, requiriendo su endoso o el de sus herederos en su caso para poder ser cobrado por otra persona.

El tercer señalamiento es como sigue:

"Que la Corte cometió error porque los documentos que se presentaron por el demandante Agustín Balasquídez, para su pago, eran documentos *privados*, y el Auditor tiene que exigir que se le presenten documentos auténticos, ante Notario, o documentos públicos, para poder ordenar el pago."

En el acto de la vista de modo insistente se opusieron los interventores Herederos de Martínez a la admisión como prueba de los documentos de cesión, basándose en que no eran públicos ni auténticos por sí mismos.

En el caso de *Valladares* v. *Berríos, Auditor,* supra, se transcribió la sección 17, inciso (*a*) del Reglamento promulgado por el Auditor de Puerto Rico para los auditores municipales que dice:

"Los Auditores Municipales no podrán extender libramientos a favor de personas que no sean acreedores directos del municipio, o herederos de éstos en caso de muerte de aquéllos; ni reconocerán traspasos de haberes de ninguna clase de un individuo a otro, extendiendo siempre todo libramiento a favor de la persona, o herederos de ésta, que prestó el servicio o suministró los materiales, a menos que por mutuo acuerdo, dichos traspasos sean hechos por documento auténtico o escritura ante notario, debiendo en este caso el auditor municipal conservar como justificante del traspaso copia de la expresada escritura o documento."

Sólo pueden reconocerse, pues, por los auditores municipales los traspasos cuando constan en documento auténtico o escritura pública y aquí se trata de meros documentos privados.

■ La corte de distrito permitió con la oposición de los interventores que se practicara prueba ante ella reconociendo como auténticas las firmas que figuran al pie de los documentos, y se sostiene que una vez que las firmas fueron así reconocidas no puede negarse que se trata de documentos auténticos.

No estamos conformes. Éste es un procedimiento de *mandamus*. La situación jurídica que hay que considerar es la que surge en el momento que se requiere al demandado y no después. La autenticidad debió ser plena antes de recurrirse a la corte.

Lo que nos hace dudar en relación con este extremo en este caso concreto es la circunstancia de que si bien los documentos no tenían el carácter de auténticos para todo el mundo, quizá debiera concluirse que lo tenían en cuanto a los demandados por figurar en ellos la firma del tesorero del municipio de que dichos demandados son funcionarios.

█ Se sostiene, por último, por el cuarto señalamiento, que erró la corte al reconocer validez a la cesión del sueldo de enero cuando se trata de un acto nulo por ser contrario a la política pública, ya que la cesión se hizo antes de devengarse el sueldo.

Llama la atención en verdad que los documentos no tienen fecha. Se declaró que se otorgaban el día último de cada mes, pero cuando se llegó al de enero, como el funcionario murió el 27 de dicho mes, hubo de reconocerse que lo había sido antes, vacilándose en la exacta fijación del día del otorgamiento.

Precisa, pues, concluir que por lo menos uno de los documentos en que se basa la reclamación de Balasquide y al que se le reconoció todo su valor por la corte de distrito, es nulo.

En el caso de *Schmitt* v. *Dooling,* reportado en 36 L.R.A. (N.S.) 881, 885, la Corte de Apelaciones de Kentucky, dijo:

"Se ha resuelto frecuentemente que un funcionario público no puede anticipar su salario; es decir, no puede cederlo antes de estar vencido. La razón de esta regla, según la consignan todos los tribunales de este país y de Inglaterra, es que va contra el orden público permitir que eso se haga, por el fundamento de que sería en menoscabo del servicio permitir a un funcionario que perciba por anticipado su paga; que perdería interés en su trabajo; y que sus servicios serían por consiguiente menos valiosos.

"En Holt v. Thurman, 111 Ky. 84, 98 Am. St. Rep. 399, 63 S. W. 280, esta Corte tenía bajo consideración el derecho del abogado de una ciudad empleado por salario fijo, a ceder una parte del mismo que no había ganado, y, al resolver que no era una política pública sana permitirle que lo hiciera así, adoptó el texto que sobre esta materia se halla en la American & English Encyclopedia of Law, vol. 2, 2ª ed., pág. 1033, como expresivo de la mejor razón para la existencia de la regla. El texto es como sigue: 'La protección que así se extiende a los que se dedican al cumplimiento de deberes públicos no se basa en el motivo de su interés privado sino en la necesidad de lograr la eficiencia del servicio público, asegurándose de que los fondos provistos para su mantenimiento sean recibidos por aquellos que han de desempeñar el trabajo en los períodos fijados para su pago. La cesión de tales fondos antes de que hayan vencido perjudica la eficiencia del servicio público y es nula, tanto en ley como en equidad, por ser contra el orden público.'

"Un estudio de todas las autoridades que resuelven que es contra el orden público permitir a un funcionario del pueblo que traspase una parte no ganada de su salario demuestra que se basó en el mismo principio, a saber, que tales cesiones, de ser consentidas, serían en detrimento del servicio."

Y en el caso de *Bangs* v. *Dunn*, 66 Cal. 72, la Corte Suprema del estado se expresó así:

"El apelante alega que la regla inglesa, que sostiene que una cesión por un funcionario de su salario antes de vencer es contraria al orden público y nula, no tiene aplicación al estado de cosas de este país. Así se resolvió en State Bank v. Hastings, 15 Wis. 78. Por otra parte, se resolvió por la Corte de Apelaciones de Nueva York que tal cesión era contraria al orden público y nula. (Bliss v. Lawrence, 58 N. Y. 442.) Creemos que la conclusión del tribunal de Nueva York está sostenida por el razonamiento más satisfactorio."

Aunque no se estimara, pues, la existencia de la cosa juzgada, siempre procedería la revocación de la sentencia recurrida. En casos de *mandamus* debe surgir claro, patente, el derecho del peticionario y el deber del demandado, para que esté justificada la expedición del auto, y aquí no surge de tal modo.

Ahora bien, ¿puede, habiendo en consideración

todo lo expuesto, expedirse el auto a favor de los herederos del funcionario fallecido?

En primer lugar, cabe preguntar si habiéndose desestimado la primera solicitud de *mandamus* establecida directamente por los herederos de Martínez no quedó también en cuanto a ellos juzgada la cuestión. La respuesta tendría que contestarse en la negativa porque aquel caso en cuanto a ellos no quedó decidido por sus méritos como quedó en cuanto a Balasquide. La petición de los herederos se desestimó simplemente por no haber cumplido con el necesario requisito del requerimiento previo a los demandados. Cumplido ese requisito y negado el pago, pudieron impetrar entonces válidamente el auxilio de la corte.

La segunda pregunta que cabe formular es la de si demostraron un derecho claro a percibir los haberes. A nuestro juicio debe contestarse también en la negativa.

No es posible dejar de reconocer alguna fuerza a la prueba aportada por Balasquide. Ya dijimos que sólo procedía recurrir al remedio de *mandamus* cuando se trata de derechos claros por parte del demandante y de deberes imperativos por parte del demandado. Y aquí los documentos de cesión, cuatro de ellos, arrojan por lo menos sombra al derecho de los herederos a percibir los haberes devengados por su causante, y bajo tales circunstancias el *mandamus* no procede.

Hasta que la contienda existente entre las partes no sea solucionada privadamente entre las mismas o hasta que una corte competente en el procedimiento adecuado la decida, no existirá un derecho claro al cobro por parte de alguien en este caso que deba ser ineludiblemente reconocido por los funcionarios del municipio deudor.

*Por virtud de todo lo expuesto debe revocarse la sentencia recurrida y negarse la expedición del auto tanto en cuanto al peticionario como en cuanto a los interventores, todo sin especial condenación de costas.*